States v. American Commercial Lines, LLC States v. American Commercial Lines, LLC States v. American Commercial Lines, LLC States v. American Commercial Lines, LLC States v. American Commercial Lines, LLC If you search this record, I believe you will adequately find that the District Court did not have sufficient evidence to grant this motion for summary judgment, particularly in regards to the denial of limitation of liability under Section 2704. Although this Court is probably quite familiar with the Oil Pollution Act, remember this Act arises out of a very bad and tragic event called the Exxon Valdez back in the 1989-1990 era. The government decided to set up a situation whereby the responsible party is designated not by fault but by status. That's if you are the carrying vessel or the owner of the petroleum product and it is discharged into navigable waters or into adjacent lands, they are strictly liable for the cleanup and associated damages, even though there has been no fault associated with it, and allowing some amelioration of these harsh consequences. Was that a codification of LaBeouf in some of the earlier cases? No, Your Honor. Even under the Clean Water Act, there were much more liberal ways in which the defendant could defend itself against this type of liability. But open is a very strict liability statute with very narrow defenses, but in this case the defense is warranted. Also recall we are not asking for repayment with taxpayer dollars out of the U.S. Treasury. The funds which would be recovered come from the trust fund. The source of those trust funds are solely derived out of a tariff, which is a $0.10 or $0.20 per barrel tax on all imported oil. I was wondering that. If you prevail on the third party defense, what would you recover? I recover the amounts we paid. Which is a lot. Over $70 million. And if you prevail on the limited liability, do you know the numbers right away? I believe our limit of liability is somewhere in the area of $46 million. So you'd still recover? That's correct. I would hope the amount of the recovery would in no way color the interpretation of the statute. No, I understand that. I was just wondering how the whole regime works. That's how the regime works, and it was purposeful. The purpose of OPA was to ensure cleanup, pay when other people couldn't pay, but more importantly not to punish someone who's found strictly liable, particularly without fault. And the funds come from a source outside of the U.S. taxpayer. That's the purpose. The fund has been collecting this money for over 20 years. But then, just jumping to the merits issue, the two, 2703 and 2704, are somewhat close when we look at the statutory language. We are asking your client as responsible party, did the spill occur connected to or pursuant to a relationship with your client? With all due respect, Your Honor, I think those statutes are very dissimilar. Those phrases that I focused on? That's correct. Is that why you're emphasizing now even more the limited liability because you think that's narrower? That's correct. And the reason we appealed from the denial of 2703, the exoneration, is to demonstrate to this court the tremendous distinction between the two sections. Okay. Is there a case law that helps with that? I know you've made that point, and the language is different, but where do we look to establish you're about to convince us of it? This is a case of first impression. Yeah, I know. So how do you add the word tremendous distinction in there? Where do you get that from? Two reasons. Okay. One, being an old contract lawyer that I am, particularly in insurance, I look at the wording, and then I look at if there's no definition within the statute, I then look at the dictionary definitions. In connection with is closely associated with arising from or arising out of. This court has numerous decisions interpreting arising out of, giving it a very broad scope. Okay. Pursuant to, if you look at the dictionary definition, is in accordance with. That's a tremendous distinction. It means if I can demonstrate a grossly material breach of my contract, the acts of my contracting party cannot be pursuant to. Okay. This is extremely helpful to me and clear, but when you made your first point, trying to diminish the first, you don't want to argue against yourself. But if it's arising out of, then it would make sense that you'd have complete third-party defense if it were an act of God or the little vandal in LaBeouf that walks in and pulls the plug, but maybe not here where they're working for you. Well, again, let me explain on that. Okay. I would agree with your argument somewhat, Your Honor, if you're focusing on 2703. Well, I'm jumping because you're, yeah, I'm interested in both. All right. I'm focusing really on 2704. Okay. On 2704, my question would be what about that it modifies acting? In other words, pursuant to, you know it by heart. Right. It says it's pursuant to the contract. Well, but it's acting pursuant to. That's correct. As opposed to focus on the acts themselves. Right. And what I am advising the Court or suggesting to the Court is that when you look at pursuant to in contrast to arising from or in connection with, you've got to look at the totality of the contract. And I would think the rule is that you're not pursuant to that contract if you have a grossly material breach of that contract that is causative to the event. That's how pursuant to should be read in this context. I'm not saying any mere regulatory violation, which may give rise to a breach of contract, takes me out of pursuant to. I am not suggesting that at all. You have a very specific set of facts here. And we don't have to worry about the floodgate argument, which the government has made, because of the facts of this particular case. But why wouldn't this be exactly where Congress would want to force you to be truly exacting in the persons you hire? So they aren't grossly negligent and criminal. Now, I know the District Court said you did as well as you could do. I'll go one step further. You'll go further. First of all, there's a two-step process under 2704. So that's why it's more than just looking at the contract. They impose upon my client the burden of due diligence. What did we do to ensure ourselves that this particular towing company was a professional towing company? We did multiple things. I understand the District Court said we did minimum amount of vetting, but it was sufficient to satisfy the due diligence. This is pass-fail. This is not whether I got an A, B, or C in a course. I passed the course. We did exercise due diligence. But let's go a little bit further, and let's compare ACL's activities in investigating its particular contracting party compared to what other parties in this particular situation also did. DRD was responsible within the prior six months for two other accidents, one involving the PAMD, which was an ACL barge tug on charter to them, and one was with the Ruby E on charter from ZETO. In both cases, the Coast Guard investigated those situations. In both cases, at Terrance Aft, the DRD was operating those tugs illegally. In both cases, the Coast Guard did not discover the illegality. In both cases, the AWOA, the American Waterways Organization, did not discover DRD's criminal activity. That's what makes this case so unique. But what are the facts that would get you past summary judgment? In other words, let's say you convince us. What gets explored to give us any meaning to that pursuant to phrase? Well, the only thing that was pursuant to in this case was that we gave the order to load the barge at Hanrahan, deliver it to Algiers in a particular time frame. But the spill occurs during that exact period. I agree with you. That's still not pursuant to because of the criminal activity. Okay. But if it's just that prosecutable acts will always insulate the responsible party, am I overstating? No, I'm not saying that at all. Okay. What I'm saying is those criminal acts must be causative to the event. And if you look at the Gabarak decision, which was the district court's first decision in this case, it specifically finds that the criminal activity of DRD in allowing its tugs on numerous occasions to be operated by less than licensed captains and under-licensed steersmen created an atmosphere which allowed their crews to do the same even without DRD's knowledge. And in this case, we have a captain leaving a vessel. But criminal acts sounds like a clear thing, but how would that become a rule of law? Because what if prosecutors just choose not to prosecute or they defer a prosecution? It's not always a bright line criminal act. But in this case, you do. You have that bright line. And that's why I'm saying you don't have to worry about the floodgate argument. You've got a very bright line here where you have an operator that defrauded many of the contracting parties. I mean, even Kirby Transportation, who has the largest fleet of red flag inland barges in the country, gave DRD their safety award one year, even though they're operating their tugs illegally also. So the point here is you've got a very bright line. You're not going to have a floodgate situation. Let's get back to the language of the statute, 2704. Yes. Pursuant to a contractual relationship, you're saying that if any time the contractor doesn't do what the contract calls for, then you get the exception. No, I'm not saying that at all. I'll give you a perfect example. This was a 24-7 tug. It should have had two licensed captains aboard it whenever it operated. If there was a licensed captain aboard on this night and he violated a regulation such as the rules of the road, I wouldn't be standing before you. They were operating pursuant to that contract because they had a legally licensed captain aboard who made a mistake. We don't have that situation here. The only thing the government proved at summary judgment was to satisfy the pursuant to argument was that the movement was a barge at our direction. If that was the rule, if that satisfies pursuant to, then this Court is making a bright-line rule saying that any charter party by any entity in this country cannot limit its liability by the very nature that a charter party permits the contracting party to designate the load port, designate the time of pickup, designate the port of discharge, and time of discharge. That is not sufficient pursuant to the contractual relationship. It's got to be more than that. The activity to satisfy the pursuant to language must be causative, must be a serious violation of the contract. Let's say that you contract to go from point A to take something south, and the barge hunter gets confused and goes north, and that's when the accident occurs. Well, that's not pursuant to the contract. I agree with you. However, that's either an immaterial breach or a minor breach of contract. What was the real cause of the accident? Was it because he ran aground and misread his charts? That would not give us a defense to this limitation of liability. But he wasn't acting pursuant to the contractual relationship because he wasn't doing what the contract called him to do. I just have a hard time calling the balls and strikes under your theory. I understand that, but I think it's pretty easy to call this a strike because we have a consistent pattern of illegal conduct going over a series of years. Is the legal compliance provision in the contract relevant to your argument or not? I would think it's not, but it's helpful. It's helpful. I would think any time you operate outside the legal bounds of a contract, it's not pursuant to. But the government's response would be then any time you put one in a contract, you're always out of it. Again, I am not looking for that far-reaching rule. I'm looking for a narrower rule that is more in accord with what Congress meant, to protect innocent parties who are merely strictly liable by status. And since you say it's first impression, you're urging that we draw support from respondeat superior law, what's the case that you think articulates the interpretation, even though there's nothing in the OPA? I would think if you look at the statute itself, it could easily have been rewritten to say including criminal conduct. When they used the terms willful and wanton conduct, they could have said including all criminal conduct by third parties or others. They don't do that. Congress didn't mean this to be draconian. Congress wanted to give- Maybe, I don't know. I may be overstating. Congress may have wanted this to be draconian, but they didn't want to punish innocent people. ACL was exonerated from any and all liability. They were found to have properly vetted, minimally, as the court said, but properly vetted their towing company. In addition, this towing company had a history of fooling other operators, including getting the reward for safety from Kirby. And ACL just didn't know that? The court found that. No one knew it. Remember, the Coast Guard itself on two major incidents months prior to this one, the Ruby E and the Pan D, the Coast Guard investigation. I'm curious if you may, I think you sum it up, but do you know off the top of your head the criminal penalties that applied to the individuals, the responsible DRD individuals? What happened here was they plea bargained down to failure to report the incident. No time, no money? Well, one captain lost his license for six months. That was the general who left the boat. Mr. Bavary, I believe, got one year, but then it was suspended. So, again, the real actors in this case didn't pay any money, basically going on with their lives. And ACL and its underwriters are the ones who are paying a penalty for acts which were not foreseeable, which were not legal, and for which they did their best to protect against. And that's what the statute requires. For this court to allow pursuant to to extend merely to certain provisions of a contract and not make the rule that the acts have to be causative and material breaches, I think oversteps what Congress wanted. All right. Your initial time has expired, Mr. Nicoletti. You've saved time for rebuttal. Thank you. Ms. Keist. Good morning, and may it please the Court. My name is Sarah Keist on behalf of the United States. This is a case that falls within the core of the exception to the limitation of liability for acts by a contractual third party. Section 2407C, 2704C of OPA does not allow a party to limit its liability if the oil spill was caused by gross negligence or a violation of a regulatory provision, specifically safety or operating or construction regulations by the responsible party or a party acting pursuant to a contractual relationship. Mr. Nicoletti says we shouldn't punish a party that is strictly liable but found not at fault. A sale was found to not bear responsibility for the spill under the general maritime law because of the shield provided by the bare boat charter in this case. But Congress explicitly meant OPA to go beyond the general maritime law, and it passed this provision that allows a party to limit its liability if it's without fault, and it is liable to a certain point regardless of fault, except in this specific circumstance where the spill is caused by gross negligence or a violation of a safety or operating regulation by it or somebody acting pursuant to a contractual relationship. It would be a strange reading of the statute if ACL could limit its liability unless the spill was caused by a violation of a safety or operating regulation by a party in a contractual relationship, except if the regulatory violations were especially important to preventing oil spills, such as the proper manning and the rest requirements. Congress considered manning and rest requirements important when it was passing OPA. It added provisions to enhance those requirements. These are provisions key to preventing oil spills. And so the argument that violation of those regulations is somehow so egregious that it lets ACL out of its strict liability when the statute provides no such outlet in its text, I think is contrary not only to the text but also the intention of the statute. But its focus on 2704 sort of has some compelling. The general rule is you do limit liability, correct? Yes. So you're arguing for the exception, so we would construe that narrowly against you just as a general matter of just statutory construction, right? I think that this may be true, but this case falls within the core of what this exception is and what it's meant for. But then he says, you know, if the focus is the pursuant to, it really wasn't pursuant to contractual relationship if it's so unforeseeable. It's like an act of God, this criminal conduct so egregious. And they vetted as well as they could, and this person just was malicious and caused the spill. Well, when Congress created this exception to limitation of liability, it's not just for regulatory violations. It's for gross negligence too. And I think this is contemplating egregious conduct, a gross negligence, and that is going to remove your ability to limit liability. He said first impression. Are we sort of rudderless from your standpoint? There's no case law that informs how we interpret that exception from 2704? I think it is useful to look at the case law for 2703 and LaBeouf, which is more analogous to 2703 under the Clean Water Act. But I also think the text of the statute is fairly clear here. So, again, no CERCLA law, nothing is relevant to 2704. CERCLA does not have an analog to 2704. It only has an analog to the 2703 complete defense. But this provision of the statute focuses on what is the cause of the spill, and in this case it is undisputed that regulatory violations by ACL's contracting partner, DOD, towing was the cause, specifically the undermining, the violation of the rest rules, the violation of the naggification rules, the violation of the radio rules. And these are exactly the type of regulations that are intended to prevent collisions and oil spills. And as I mentioned, Congress specifically recognized this in the passage of OPA. And I think DOD was acting pursuant to the contractual relationship when it committed these violations. This is a contract to operate this tug and move this barge on this trip, and these violations were committed in the course of operating this tug and moving this barge. I don't think this is a complicated application of pursuant to. I also would like to respond to the suggestion that this was a one-off or a three-hour cruise. This was a long-term arrangement with DRD Towing. The charters were completed in August of 2007, and presumably the relationship would have continued after that. And Judge Limmel in the limitation trial, which is the 900 F sub second 669 decision, specifically found that ACL entered this relationship to save money because there's a shortage of licensed crew in the industry and for economic gain. And so Judge Limmel has already made that finding. And I think the fact that ACL knew there was a shortage of licensed crew should have put them on notice to make sure their vetting was more than, as Judge Limmel characterized it, minimal, sufficient to escape negligence, but not sufficient for OPA strict liability. And I think the other piece of that is not just whether ACL could have discovered it, although I think their vetting could have been better, and they could have monitored DRD's conduct. DRD was picking up barges from ACL's fleet and taking them on trips and bringing them back to ACL's fleet. If ACL wanted to make sure they were properly crewed, it had ample opportunity to do so. But it also could have ensured that DRD had sufficient insurance beyond what is legally required if they were concerned about liability. They could have made sure that DRD would be solvent. These are some of the concerns this Court raised in the LaBeouf towing and reaching that decision. I asked him, would you say OPA was codifying the LaBeouf towing logic and reasoning, or it's not helpful to it? I think it is. It is related to the third-party defense, not the limitation, because there isn't that analog. But what existed in the Clean Water Act was a limitation. I'm sorry. The complete defense was available if a third party was the sole cause of the spill. It didn't have this extra language about contractual relationships. And what that Court in LaBeouf towing was doing was saying the term third party, which wasn't defined in the statute, does not include third parties with whom you have a contractual relationship. Now, when Congress passed OPA, they made that an explicit part of OPA. But I think the reasoning is the same. And I apologize for not having the cite on my fingertips. We do make a cite in the briefs that Congress intended to incorporate the law that had been developed under the Clean Water Act when it was amended. And Buffalo Marine is interpreting OPA. Yes. And Buffalo Marine favorably cites LaBeouf. Yes, it does. But that's all 2703 focus, correct? That's all 2703 focus, yes. And the government's argument, though, seems to be, but correct me if I'm wrong, is that while the connected to is essentially the same thing as pursuant to, and so whatever we rule in the 2703 context is pretty much the result. Is that oversimplified? I think there's very little daylight between those terms. But also the structure of those two provisions is different. The 2704 defense, the pursuant to is modifying the actor. The spill is caused by regulatory violations by a party acting pursuant to a contractual relationship, whereas the 2703 defense is modifying the act. The spill has to be solely caused by the act that is in connection with a contractual relationship. I've noticed that, but that seems a little ironic because that would mean it's tighter. You get less relief in the limited liability context if you're modifying the actor, right, because wouldn't that embrace all of DRD's conduct? I think that the difference is it could be any kind of act in the third-party defense, whereas we're looking at a much narrower set of acts that can break limitation. It has to be a violation of specific types of regulation, safety or operating or construction, or gross negligence, whereas in 2703 it's any act, whether negligent or not. He says Congress didn't write in crimes. The violations that break regulation are violations of safety and operating regulations intended to prevent oil spills. Whether they are or are not also crimes I don't think is relevant. The fact that they're regulations is what triggers the limitation. The text doesn't say all violations of safety and operating regulations except those that could be charged as crimes. I also want to note that the crime here that was charged was the reporting violation. I don't know about the discussion of fleeing down. The charging documents are in the record. The crimes that were charged were the reporting violation and the Clean Water Act's discharge violation, and that's it. And I know also in the briefs that there's a reference to some of the language in the factual basis for the plea that creating the dangerous situation, but if the court looks at the crime that's charged, the elements of the crime are the elements of the crime. It can't be expanded by the factual basis. This was a failure to report a hazardous condition on a vessel, and so on that theory you could take all these underlying safety and operating regulation violations that are not themselves criminal and argue they're criminal. Is there any legislative history that's relevant to this? I'm pardon, Your Honor? Legislative history on this particular provision? There's not a great deal of legislative history on this particular provision. However, there is a significant amount of legislative history about the purpose of the Act being to prevent spills, and I do think a characterization of the Act that would allow a responsible party out of strict liability for particularly serious violations of the very regulations that are meant to prevent oil spills would be contrary to that purpose. It would certainly remove motivation from a responsible party to make sure it's contracted with responsible entities and monitor that they continue to be responsible through the course of the relationship. I also think that the rule proposed by HCL is hard to see how it would be workable because it doesn't create bright-line rules between what is criminal and what is not criminal, especially in a highly regulated field where violations of safety and operating regulations can be charged, whether it's through failure to report or otherwise, as criminal activity. And I also think it would be hard to understand where the line would be drawn on pursuant to under the rule that's proposed by the plaintiffs here. Maybe it's helpful to, I think, talk about a hypothetical that wouldn't be pursuant to a contractual relationship. As was mentioned, DRD Towing was operating vessels on behalf of various towing companies. If HCL was operating a vessel for Kirby, for example, and committed regulatory violations and ran into a moored DRD barge, that wouldn't be pursuant to the contractual relationship with HCL, even though they obviously have a contractual relationship with HCL related to the Mount Oliver. So that's why we're not arguing that the mere existence of a contract is sufficient. It's that it was a contract to operate this vessel. It was a charter to move this particular barge on this particular mission, and the regulatory violations were committed during the execution of that contract. But in your brief, you're fairly strongly disfavoring the Second Circuit's extra something. Yes, Your Honor. But you don't really tell us what you agree. It's not just mere existence. It has to be something more. The Second Circuit says what they think it means. You say that's wrong, but you don't really, in my understanding, tell us what the extra is. So where would we look? I think it's whether the Act is ñ well, this is just for the 2703. Yes. The Act is in connection with a contractual relationship. So you look at whether the connection between the Act and the contractual relationship. So if it's a completely unrelated contractual relationship, you know, I happen to have a contract, you know, to detail my car. Yeah, I understand. I like the hypothetical you gave. Right. Is there a court that's articulated the position the government favors on 2703? Is there a case? I don't know if there's a case that addresses it in that much detail. But the 2703 cases out there, if you look at the facts of them ñ They all end up like that. Yeah. Back to your argument on pursuant to that. Okay. I guess I would respond to the ACL's argument that this reading would turn all charters into contracts where negligence would be pursuant to that charter. I think that that's not strange or surprising. You're talking about charters. If you hire a company to move your fuel barge and they commit regulatory violations in the course of moving that fuel barge, then that falls within the provisions of 2704C. And I don't think it's relevant that that would be the case with most charters to move a fuel barge. I don't think that is a reason to limit what types of regulatory violations fall under the exception. The only problem with that logic is if that's the extent of the limitation, it would seem to be 2704 would always be met when you meet 2703. I think the difference is ñ And there has to have been a reason they wanted to limit liability. Even when it was a third-party defense isn't available, we're still going to give the responsible party a limitation. There's got to be some window between the two. Right. The window is that you can have limitation if the spill is caused by ordinary negligence of a third party rather than or just an accident that doesn't have fault involved. It's limited by the gross negligence and violation of operating or safety regulation, whereas 2703 is about any act or omission by a third party. I think that's the main difference between the two. In conclusion, DRD was transporting ACL's oil-laden barge up the Mississippi River on the morning of the accident solely because ACL had hired DRD to operate its tug and transport its barge and had specifically instructed DRD to pick up this barge, have it filled with oil, and make this trip. This is in the core of what 2704C is intended to cover, and I would like to emphasize that ACL did choose DRD. This was a business arrangement, as the court found, for economic benefit of ACL. It could have chosen a different partner. It could have monitored this partner. It could have ensured it was financially solvent to handle a spill. It did not do so. Thank you, Your Honors. All right. Thank you, Ms. Keyes. Mr. Nicoletti, you've saved time for a bubble. Let me address the LaBeouf decision. That comes under the Clean Water Act pre-OPA. Most importantly, the defense is limited to acts of third parties, and in LaBeouf they found that the actor who committed the spill was under a contractual relationship with the responsible party. Under that act, the mere existence of the contract was sufficient to defeat the defense under the Clean Water Act. But that is where they gave the example of Vandal gets on board the boat and pulls the plug. Absolutely. And that's absolutely not pursuant to a reconnection. That's a third-party actor. Right. But when it's the same person you hired who reaches down and pulls the plug. Well, that's the reason why 2704 has its language. I mean, in our brief we quote the following. Where Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusions or the exclusions. You have under 2703 in connection with. In 2704 we have pursuant to. Under dictionary definitions, they're radically different standards, radically different applications. Therefore, this court cannot rely on any case which interprets the language of arising from or connection with in interpreting pursuant to under 2704 because Congress purposely did not use the same language. The government has not refuted that. More importantly, under 2704 the government has the burden of proof. The only thing they've shown you to date is the tug and barge was sent out at the instructions of a charter which was ACL and no more. More importantly, we're not talking about the acts of negligence at the time of the incident as a singular out-of-focus or excluded item or narrow item. In Gabbarack, the district court found... In what? In Gabbarack, which is Judge... Gabbarack, right. That's district court. That is most instructive because in that case the court specifically noted the foregoing evidence of DRD's privity and knowledge is further corroborated by the pleas of guilty to federal crimes by DRD. Not by Babber at the stairsman or Carver the captain. DRD itself was found to have violated criminal statutes, specifically in the way it operated its fleet, not just in this instance but generally. Again, the government is trying to say that ACL saved money by doing these chartering agreements. This was a local operation. It was the Hanrahan fleet. ACL is out of Indiana. So to operate, to move its barges within the fleet, which is principally what DRD was supposed to be doing, moving barges locally within the fleet, they contracted that out. They generally do not contract out the movement of their red flag barges. That is just not something ACL does. So ACL had no economic gain from this particular contract with DRD, and they did vet. The government fails to note two other incidents which came up at the trial in the Gaberack matter. DRD called up ACL and said, look, we're out, we're out, we're over time, our guys are out 12 hours, what should we do? They said, look, I know you're supposed to deliver it tomorrow, but tie the boat up. We don't want you operating. That's vetting. That's in furtherance of. In addition, at one point they were told that one of the DRD captains' licenses had expired. It was up for renewal. They specifically called DRD and told them, tie up the boat. Until you have a licensed captain, we don't want that boat to move. So what the government suggests ACL should have done, they actually did do. Thank you, Mr. Nicoletti. Your time has expired, and your case is under submission. Thank you.